*202 WYNN, Circuit Judge,
concurring in part and dissenting in part:
While I otherwise agree with the majority opinion, I cannot agree with Part III or with the portion of Part IV.C.l that discusses the “effective absence of coverage” aspect of a telecommunications provider’s burden. As noted on the cover page of the opinion, Part IV.C.2 does not constitute the opinion of this court. The discussion in Part IV.C.l regarding effective absence of coverage is, therefore, dicta because we do not decide whether T-Mobile established an effective absence of coverage. Put differently, because we affirm the Board’s decision on the ground that T-Mobile failed to show both a lack of alternative sites and that further efforts to gain approval of alternative sites would be fruitless, the discussion pertaining to the effective absence of coverage in Part IV.C.l is unnecessary to the holding of this case. Therefore, I decline to join Part IV.C.l’s dicta regarding effective absence of coverage.
Regarding Part III of the majority opinion, I must dissent because it fails to fully consider the significance of two separate and distinct land use entitlements — the special exception permit and the commission permit. Although the Board of Supervisors (“Board”) improperly denied the Stephens Silo special exception permit based on its concerns about radio frequency emissions, the Board provided distinct and valid reasons for denying the Stephens Silo commission permit. Neither the majority nor the district court has sufficiently explained how it is that the improper special exception denial somehow taints the separate and distinct commission permit denial, which alone would have been sufficient to bar T-Mobile from constructing its Stephens Silo project. Because I would reverse the district court’s order that the Board grant both permits, I must respectfully dissent from Part III of the majority opinion.
I.
Focusing on the facts that pertain to the Stephens Silo site, T-Mobile wanted to construct a wireless telecommunications facility on a farm in Lovettsville, Loudoun County, Virginia. Loudoun County’s land use regulations required two separate land use entitlements before construction: a “commission permit” and a “special exception.”
The Board and the Planning Commission make decisions on whether to grant such entitlements. In doing so, they are guided by the policies and regulations in Loudoun County’s Comprehensive Plan and Zoning Ordinance.[1] Loudoun County’s Comprehensive Plan contains a Telecommunications Facilities Plan (“Telecom Plan”), which explains that its overarching goal is “to encourage improvements in telecommunications services while mitigating the impacts on ... residents, nearby land uses, scenic beauty, and rural heritage.” J.A. 314. The Telecom Plan is generally intended to “ensure compatibility of telecommunication facilities with nearby *203 land uses” by requiring collocation of facilities whenever possible, establishing design criteria and removal provisions, and creating a process “by which an applicant can demonstrate their compliance with these policies.” J.A. 314-15.
The Telecom Plan contains specific policies designed to mitigate the visual impact that antennas, towers, and monopoles have on the “historic character of the rural ... areas.” J.A. 318. Of note here, “the County prefers locating new antennas on existing towers, monopoles or other tall structures[,]” and “[w]hen existing structures cannot be used, new monopoles or towers should be sited within the right-of-way for overhead utility transmission fines where the visual impact of an additional tall structure would be minimal.” J.A. 318.
All telecommunication facilities in Lou-doun County must meet specified criteria to demonstrate compliance with the Comprehensive Plan. The procedural mechanism for ensuring such compliance is the commission permit, which certifies that the proposed project is “substantially in accord with the adopted Comprehensive Plan.” Loudoun Cnty., Va. Zoning Ordinance § 6-1101(A). In some zoning districts, telecommunication facilities are permitted “by right[.]” But in other zoning districts, the Board has determined that telecommunication facilities “have the potential for a deleterious impact upon the health, safety, and welfare of the pubfic[.]” Id. §§ 5-618(B), 6-1301. If a telecommunication facility is proposed in such a zoning district, the proponent must obtain a special exception in addition to a commission permit. Id. § 5 — 618(B)(2). Proponents of projects that are subject to a special exception must demonstrate compliance with criteria beyond those required for a commission permit. Id. § 5-618(B)(3). Ultimately, whether to grant a special exception is in the Board’s discretion. Id. § 6-1301.
The Stephens Silo site, located in the AR-1 district, required a special exception in addition to a commission permit. When the Stephens Silo proposal came before the Board on October 17, 2011, the Board voted to overturn the Planning Commission’s approval of the commission permit and to deny T-Mobile’s application for a special exception. The Board articulated different reasons for the denials:

Commission Permit

1. The proposed project is not fully consistent with the land use policies of the Revised General Plan and Strategic Land [U]se Plan for Telecommunications Facilities (Telecommunications Plan). The 1996 Strategic Land Use Plan for Telecommunications Facilities recommends any new commercial telecommunication antennas in the rural areas first locate on existing towers, buildings, or other tall structures within a two (2) mile radius....
2. Currently there are existing agricultural silos within a two (2) mile radius on which to locate telecommunications antennas which are preferred locations as outlined in the Telecommunications Plan.
Special Exception
1. The proposed design and siting has not mitigated its significant structural presence, thus creating an unnecessary visual impact on surrounding properties.
2. The proposed silo height of 90-feet does not blend with the natural and built environment of the surrounding area. The height and appearance is not in keeping with the silos and other farm structures in the immediate vicinity.
3. A denial does not have the effect of prohibiting the provision of personal wireless services in this area of the *204 County, with current service available from T-Mobile and others.... Supervisor Miller made a friendly amendment to include negative environmental impact as the fourth reason for denial of the SPEX 2010-0020.
J.A. 1180-81.
II.
Thus, the Board articulated separate and distinct reasons for denying each permit. Regarding the commission permit, the reasons given for its denial are directly related to the rural location policies contained in the Telecom Plan. In denying that permit, the Board did not exercise discretion; rather, it made a finding that T-Mobile’s proposal failed to comply with the Comprehensive Plan — a prerequisite to obtaining a commission permit.[2] And because T-Mobile could not construct the facility without first obtaining both permits, the lack of a commission permit would have been sufficient to preclude T-Mobile from building its Stephens Silo project.
The majority opinion dismisses this nuance regarding Loudoun County’s permitting procedures as a mere “formality.” However, I must agree with the County that T-Mobile could not construct its facility without the commission permit and that the denial of the special exception was thus “superfluous.” Appellant’s Br. at 37. And neither the district court nor the majority opinion has explained how it is that the improper “superfluous” denial tainted or in any way impacted the proper and supported commission permit denial.
In sum, I agree with the majority opinion regarding the Board’s denial of the special exception. That denial — based on concerns about radio frequency emissions, which the Telecommunications Act unequivocally places beyond consideration by local governments — was improper. However, I fail to see how that invalid denial necessarily taints the proper denial of the separate, distinct, and additionally required commission permit — especially when the district court held that the County’s denial of the commission permit was supported by substantial evidence.[3]
Therefore, I must respectfully dissent from that part of the majority opinion that affirms the district court’s order forcing *205 Loudoun County to grant T-Mobile a commission permit for the Stephens Silo site. And because Part IV.C.2 does not constitute the opinion of this court, I also decline to join the portion of Part PV.C.l that discusses the “effective absence of coverage” aspect of a telecommunications provider’s burden.

. The State of Virginia requires "every governing body [to] adopt a comprehensive plan for the territory under its jurisdiction.” Va. Code Ann. § 15.2-2223(A). The purpose of a comprehensive plan is to "guid[e] and accomplish[] a coordinated, adjusted and harmonious development of the territory" to "best promote the health, safety, morals, order, convenience, prosperity and general welfare of the inhabitants....” Id. A zoning ordinance is a method of implementing the comprehensive plan. Id. § 15.2-2224(B)(4).

. The majority opinion and the district court find it significant that the Board overturned the Planning Commission's approval of the commission permit. But this fact is unremarkable for two reasons. First, the Zoning Ordinance makes clear that the Board has the authority to overturn decisions of the Planning Commission. Loudoun Cnty., Va. Zoning Ordinance § 6-1104. Second, T-Mobile had justified its decision not to locate its facilities on nearby silos on the bases that the nearby property was in foreclosure and that efforts to negotiate with the owner were "to no avail." J.A. 1511. But the Board knew that the property had emerged from foreclosure, and T-Mobile had made no attempt to negotiate with the new owners. Thus, T-Mobile failed to demonstrate to the Board’s satisfaction that it used its best efforts to comply with the Comprehensive Plan’s rural location policies.

. The majority opinion and the district court express concerns regarding the effectiveness of remanding this matter to the Board. However, such concerns are present whenever the Court orders relief, and nothing suggests that Loudoun County would flout an order of this Court. Assuming otherwise at the expense of local procedures places us in the position of substituting our judgment for that of the local planning agency and "sitting as a zoning board of appeals!.]” Pomponio v. Fauquier Cnty. Bd. of Supervisors, 21 F.3d 1319, 1327 (4th Cir.1994) (en banc) (overruled on other grounds by Quackenbush v. Allstate Ins. Co., 517 U.S. 706, 116 S.Ct. 1712, 135 L.Ed.2d 1 (1996)). The job of making land use decisions is not ours; it belongs solely to local officials.